Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us.  Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
May 21, 2018

**2018 CO 41**

**No. 17SC406, Parocha v. Parocha — Personal Jurisdiction**

In this case, the supreme court considers whether and when a civil protection order is available to a victim of alleged domestic abuse who comes to Colorado seeking refuge from a non-resident. The court concludes that an out-of-state party's harassment of, threatening of, or attempt to coerce an individual known by the non-resident to be located in Colorado is a tortious act sufficient to establish personal jurisdiction under the state's long-arm statute, section 13-1-124, C.R.S. (2017).  The court also concludes that such conduct creates a sufficient nexus between the out-of-state party and Colorado to satisfy the requisite minimum contacts such that the exercise of jurisdiction by a Colorado court to enter a protection order comports with traditional notions of fair play and substantial justice.

# The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

## 2018 CO 41

### Supreme Court Case No. 17SC406
*Certiorari to the District Court*
Boulder County, District Court Case No. 17CV30006

#### Petitioner:

Megan Maya Parocha,

v.

#### Respondent:

Richard Francis Saga Parocha.

### Judgment Reversed
*en banc*
May 21, 2018

**Attorney for Petitioner:**
Bruce Wiener
  *Boulder, Colorado*

No appearance on behalf of Respondent.

**Attorneys for Amici Curiae Safe Shelter of St. Vrain Valley, Rocky Mountain Victim Law Center, Rocky Mountain Children's Law Center, Colorado Coalition Against Domestic Violence,**
**Project Safeguard, and Safehouse Progressive Alliance for Nonviolence:**
Lyons Gaddis Kahn Hall Jeffers Dworak & Grant, P.C.
Eve I. Canfield
  *Longmont, Colorado*

**JUSTICE HART** delivered the Opinion of the Court.

¶1 Megan Maya Parocha fled from New Jersey to Colorado to escape her abusive spouse. Her husband, who knew that she had come to join her family in Colorado, contacted her almost daily. When she expressed reservations about returning to New Jersey, the frequency and tone of such contact intensified. He called her, emailed her, and texted her repeatedly, and she felt threatened. When Megan Parocha sought a civil protection order, her husband claimed that Colorado courts had no jurisdiction to offer her this protection because he was an absent non-resident. We disagree.

¶2 This case presents us the first opportunity to address whether and when a civil protection order is available to a victim of alleged domestic abuse who comes to Colorado seeking refuge from a non-resident.[1] We begin by examining Colorado's long-arm statute, section 13-1-124, C.R.S. (2017), before turning to constitutional due process considerations. We hold that an out-of-state party's harassment of, threatening of, or attempt to coerce an individual known by the non-resident to be located in Colorado is a tortious act sufficient to establish personal jurisdiction under our long-arm statute. We also hold that such conduct creates a sufficient nexus between the out-of-state party and this state to satisfy the requisite minimum contacts such that the exercise of jurisdiction to enter a protection order comports with traditional notions of fair play and substantial justice.

[1] We granted certiorari to review the following issue:

1. Whether the county court's exercise of personal jurisdiction to enter a civil protection order under section 13-14-106, C.R.S. (2016), was proper.

¶3     Because we conclude that the county court had both statutory and constitutional authority to exercise jurisdiction over Megan Parocha's out-of-state husband for the limited purpose of entering a permanent civil protection order, we reverse the district court's order and remand for further proceedings as necessary.

## I. Facts and Procedural History

¶4     Three months after moving from New Jersey to Colorado with the parties' minor child, Petitioner Megan Maya Parocha ("Wife") sought a civil protection order against Respondent Richard Francis Saga Parocha ("Husband").  Following an ex parte hearing held on December 6, 2016, the county court issued a temporary civil protection order. On December 20, 2016, the court held a second hearing to determine whether issuance of a permanent protection order was appropriate.  Husband appeared at the second hearing with counsel and raised the argument that the Colorado court could not legally exercise jurisdiction over him because he lacked minimum contacts with the state. Because there was a factual dispute about the sufficiency of Husband's contacts with Colorado, the court proceeded with a hearing on that question.

¶5     At the hearing, Wife testified to a "cycle" of domestic abuse in the marriage. Specifically, Wife alleged that in the months before she came to Colorado, Husband had raped her; threatened to punch her; threatened to take their child; locked her out of their home; broken the door of their bathroom when she was in the shower with the door locked; and grabbed her out of bed by the hair, ripping a chunk of her hair from her scalp.  She further testified that he exercised extreme control over their finances. Husband disputed Wife's allegations of violence, but testified that their relationship

3

involved bouts of fighting. Husband also acknowledged Wife's reports of alleged domestic abuse in New Jersey to Husband's employer, the local Coast Guard.

¶6 Both Husband and Wife testified that because of their fighting, in the fall of 2016, Wife declared her intent to travel to Colorado with their child to seek refuge with her family. Husband drew up a document stating that Wife could take the child to Colorado for three months. The parties also both testified that, during the months she was in Colorado, Husband contacted Wife daily—often several times a day—purportedly to speak to their one-year-old child. As the three-month period that Husband had agreed to let Wife stay in Colorado was coming to a close, Wife told Husband that she wanted to stay with her family and did not want to return to New Jersey. His response to that revelation was to tell her in a series of FaceTime phone calls, emails, and texts on December 5, 2016, that he would "make" her come back to New Jersey. It was those statements, perceived by Wife as threats, which prompted her to apply for the civil protection order.

¶7 At the conclusion of the permanent protection order proceedings, the county court determined that it could exercise personal jurisdiction over Husband pursuant to Colorado's long-arm statute. The county court deemed Wife's testimony credible with respect to "each of the alleged incidents of abuse." The county court referred to the parties' courtroom demeanor and the consistency between Wife's testimony at the temporary protection order hearing and permanent protection order hearing. On those bases, the county court found that Wife had suffered domestic abuse at Husband's hands, as defined by section 13-14-101(2), C.R.S. (2017). The county court found that

4

Wife was the victim, for example, of various "acts of coercion, including financial control, property control, psychological abuse, sexual abuse, and threatened physical abuse." The county court then made the following additional findings relevant to jurisdiction:

> As to whether [Husband] engaged in any tortious acts here in Colorado, the Court finds that he did. He specifically agreed that [Wife] and [the parties' daughter] would live here in Colorado for at least three months; and then he had frequent contact with [Wife], some of which, in the context of the abuse she suffered while they lived together, she experienced as harassing and threatening, including [the December 5, 2016 communications].

¶8 Based on these factual determinations, the county court concluded that Husband's December 5, 2016 contacts with Wife constituted tortious acts as contemplated by Colorado's long-arm statute. Accordingly, the county court issued a permanent protection order prohibiting Husband from having certain contact with Wife. That order was narrowly tailored to permit limited communications between the parties in relation to (i) the minor child and (ii) New Jersey divorce proceedings that had been initiated by Husband.[2]

---

[2] The permanent protection order specified that Husband "shall not contact, harass, stalk, injure, intimidate, threaten, touch, sexually assault, abuse, or molest [Wife] . . . [or] use, attempt to use, or threaten to use physical force against [Wife] that would reasonably be expected to cause bodily injury." An exception for email contact between the parties was made for communications necessitated by litigation or mediation, and child-related issues. Phone contact was confined to emergency situations only with respect to Husband and Wife. However, email and phone contact was permitted between Husband and the parties' minor child.

¶9 Husband appealed to the district court, which vacated the permanent protection order, declaring that the county court's exercise of personal jurisdiction over Husband was clear error. Wife petitioned for certiorari, and we granted the petition.

## II. Analysis

¶10 To exercise personal jurisdiction over a non-resident, a Colorado court must comply with both Colorado's long-arm statute and constitutional due process. Archangel Diamond Corp. v. Lukoil, 123 P.3d 1187, 1193 (Colo. 2005) (citing Keefe v. Kirschenbaum & Kirschenbaum, P.C., 40 P.3d 1267, 1270 (Colo. 2002)); see also U.S. Const. amend. XIV; Colo. Const. art. II, § 25; § 13-1-124, C.R.S. (2017). Because compliance with the long-arm statute is a threshold matter that is not necessarily subsumed in a due process analysis, we consider each in turn.

### A. Standard of Review

¶11 Whether a court may exercise personal jurisdiction over a non-resident is a question of law, which we review de novo. Align Corp. v. Boustred, 2017 CO 103, ¶ 8, ___ P.3d ___, 2017 WL 7208133, at *3 (quoting Griffith v. SSC Pueblo Belmont Operating Co., 2016 CO 60M, ¶ 9, 381 P.3d 308, 312, as modified on denial of reh'g (Oct. 17, 2016)). However, the underlying findings of the trier of fact—here the county court—as they relate to the jurisdictional question must be accepted on review, unless they are so clearly erroneous as not to find support in the record. See Briano v. Rubio, 347 P.2d 497 (Colo. 1959); see also C.R.C.P. 52 ("Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.").

6

## B. Colorado's Long-Arm Statute

¶12 In enacting this state's long-arm statute, the General Assembly intended for Colorado courts to have the maximum scope of jurisdiction constitutionally permissible. Keefe, 40 P.3d at 1270 (citing Scheuer v. Dist. Ct., 684 P.2d 249, 250 (Colo. 1984)).

¶13 As is relevant here, the long-arm statute allows Colorado's courts to exercise personal jurisdiction over a non-resident who commits "a tortious act" within the state when the cause of action relates to that tortious act. § 13-1-124(1)(b), C.R.S. (2017). We have previously held that the tortious act(s) that give(s) rise to jurisdiction must cause injury within Colorado, but that the conduct itself need not occur in Colorado to satisfy the long-arm statute. See Scheuer, 684 P.2d at 251 (holding that the alleged negligent disbursement of a Colorado client's funds from trust account by an out-of-state attorney satisfied the requirement of the commission of a tortious act within Colorado for the purposes of the long-arm statute). The statute is satisfied so long as the resultant harm occurs within the state. Classic Auto Sales, Inc. v. Schocket, 832 P.2d 233, 235 (Colo. 1992) (holding that alleged misrepresentations directed into Colorado from Nebraska in the course of telephone conversations contributed to the "totality of conduct" making up the tortious acts at issue). When identifying a tortious act for purposes of determining whether harm occurred in Colorado, we do not look at incidents in isolation, but instead at the "totality of conduct" by the actor. Id. at 236.

¶14 As defined in Colorado's civil protection order statute, domestic abuse can constitute tortious activity. Domestic abuse is statutorily defined, in pertinent part, as:

7

> [A]ny act, attempted act, or threatened act of violence, stalking, harassment, or coercion that is committed by any person against another person . . . with whom the actor is living or has lived in the same domicile, or with whom the actor is involved or has been involved in an intimate relationship.

§ 13-14-101(2), C.R.S. (2017). "Coercion," specifically, "includes compelling a person by force, threat of force, or intimidation to engage in conduct from which the person has the right or privilege to abstain, or to abstain from conduct in which the person has the right or privilege to engage." Id. The General Assembly also made plain that "domestic abuse is not limited to physical threats of violence and harm," but also includes other forms of psychological manipulation "that make a victim more likely to return to an abuser due to fear of retaliation or inability to meet basic needs." § 13-14-100.2(2), C.R.S. (2017).

¶15 Our state is not the only jurisdiction to recognize telephone calls as tortious acts conferring long-arm jurisdiction over nonresidents of the forum state. See, e.g., McNair v. McNair, 856 A.2d 5, 12, 14 (N.H. 2004) (holding that harassing phone calls qualify as tortious conduct where the allegations appear to assert the tort of intentional infliction of emotional distress). Other states have also permitted the exercise of personal jurisdiction over out-of-state actors for the purpose of issuing a civil protection order when the subject contact is only, or at least predominantly, made by telephone or written communications. See Brown v. Bumb, 871 So. 2d 1201 (La. Ct. App. 2004); Dobos v. Dobos, 901 N.E.2d 248, 253–54 (Ohio Ct. App. 2008); Haas v. Semrad, 2007 OH Ct. App. 2828, ¶ 14, 2007 WL 1653032, at *3. We agree with the Ohio appellate court's reasoning in Dobos that "[a] defendant's physical presence in the forum state is

unnecessary when, in modern life, a substantial amount of interactions occur via telephone and electronic communications." Dobos, 901 N.E.2d at 254 (internal quotation and citations omitted).

¶16 The question here, then, is whether one or more of Husband's communications knowingly directed into Colorado is a tortious act that caused injury to Wife in this state, thus bringing him within the jurisdiction of Colorado courts in connection with that injury. The county court found, after hearing extensive testimony, that Wife "has been subjected to domestic abuse" and "that there have been acts of coercion, including financial control, property control, psychological abuse, sexual abuse, and threatened physical abuse." Although Husband denied abusing Wife, it was the county court's prerogative to weigh and evaluate the parties' credibility. See, e.g., People v. Harlan, 109 P.3d 616, 627–28 (Colo. 2005). Having taken testimony from both parties and observed the demeanor of each during the proceedings, the county court found the whole of Wife's testimony to be credible. Importantly, the county court found that Wife perceived Husband's December 5, 2016 communication as harassing and threatening in light of the cycle of coercion and abuse that had preceded that communication. We see no error in the county court's conclusion that, in the context of that pattern of domestic abuse, Husband's statements through FaceTime and texts that he would "make" Wife return to New Jersey constituted tortious conduct that gave the court jurisdiction to enter a civil protection order consistent with Colorado's long-arm statute. Instead, the error was in the district court's examination of the December 5, 2016 communications in

isolation, rather than as part of the pattern of domestic abuse that had prompted Wife to seek refuge with her family in Colorado.

¶17 The General Assembly has recognized the "paramount importance" of civil protection orders to "promote safety, reduce violence and other types of abuse, and prevent serious harm and death." § 13-14-100.2(1), C.R.S. (2017). For a protection order to fulfill those goals, it must be available to protect a victim in Colorado not only from an abuser who is currently in the state but also from an out-of-state abuser who knows his victim is in Colorado. Thus, we hold that an out-of-state party's harassment of, threatening of, or attempt to coerce an individual known by the non-resident to be located in Colorado is a tortious act sufficient to establish personal jurisdiction under our long-arm statute.

## C. Constitutional Due Process

¶18 The personal jurisdiction inquiry does not end with a determination that the requirements of the long-arm statute have been met. Rather, we must separately determine whether the exercise of personal jurisdiction over Husband by a Colorado court can withstand constitutional scrutiny. In re Marriage of Malwitz, 99 P.3d 56, 61 (Colo. 2004). The question we ask in making that determination is whether Husband purposefully established "minimum contacts" in our state such that a Colorado court's issuance of a permanent protection order restraining him "does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457 (1940)); see also Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985); Keefe, 40 P.3d at 1270–71.

¶19 When we assess whether a defendant has "minimum contacts" with the state, we consider whether "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).[3] A single act can be sufficient contact "where that act creates a substantial connection between the defendant and the forum state." Malwitz, 99 P.3d at 61. We have previously held that we determine whether the connection created by a single act is substantial by asking, as relevant here: (1) whether the defendant purposefully caused important consequences in Colorado; (2) whether the cause of action arises from those consequences; and (3) whether the consequences of the defendant's actions are substantial enough to make jurisdiction reasonable. Id. (citing Van Schaack & Co. v. Dist. Ct., 538 P.2d 425, 426 (Colo. 1975)).

¶20 Here, Husband, repeatedly contacted Wife by FaceTime and text when he knew she was in Colorado, pressuring her to return to New Jersey, and, in so doing, caused her to reasonably fear for her safety because of the cycle of domestic abuse in their relationship. The cause of action—a request for a civil protection order—flowed directly from those consequences. And, in light of Colorado's strong interest in protecting victims of domestic abuse in the state, the consequences of Husband's

---

[3] In D & D Fuller CATV Construction, Inc. v. Pace, 780 P.2d 520, 525 (Colo. 1989), we held that "the commission of a tort, in and of itself, creates a sufficient nexus between the defendant and the state so as to satisfy the due process inquiry," and that when jurisdiction is premised on the commission of an intentional tort that causes injury in Colorado, no further minimum contacts analysis is necessary. Because of the important public policy concerns implicated here, we believe it is important to explain that a minimum contacts analysis would lead us to the same constitutional conclusion.

actions are certainly substantial enough such that exercising jurisdiction to enter the protection order was reasonable.

¶21    Once a showing of minimum contacts is established, we must evaluate whether the exercise of jurisdiction comports with traditional notions of "fair play and substantial justice." Keefe, 40 P.3d at 1271 (quoting Burger King, 471 U.S. at 476 (quoting Int'l Shoe, 326 U.S. at 316)). Here, we consider: (1) the burden on Husband of litigating the matter in Colorado; (2) Wife's interests in obtaining convenient and effective relief; (3) the state's interest in adjudicating disputes of this type and vindicating the rights of its citizens; (4) the interstate judicial system's interest in the efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental social policies. See World-Wide Volkswagen, 444 U.S. at 293; see also Burger King, 471 U.S. at 476–77.

¶22    Weighing these factors here, we conclude that the exercise of jurisdiction to enter a civil protection order comports with fair play and substantial justice. Any burden on Husband in this context is minimal. We note that the court did not seek to order any affirmative relief against Husband, but only to confer protected status to Wife.[4] The other interests at stake weigh heavily in favor of jurisdiction in Colorado. Wife sought refuge from Husband's alleged domestic abuse with her family in this state. She should

---

[4] In fact, in several other states, courts have found that personal jurisdiction over the defendant is unnecessary to issue a protection order, likening the issuance of protection orders to cases adjudicating marital status, in which personal jurisdiction is not required. See, e.g., Bartsch v. Bartsch, 636 N.W.2d 3, 6–10 (Iowa 2001); Spencer v. Spencer, 191 S.W.3d 14, 19 (Ky. Ct. App. 2006); Caplan v. Donovan, 879 N.E.2d 117, 123 (Mass. 2008).

12

not have had to wait until he arrived at her door to seek the court's protection from his threats in light of the history of violence and coercion in their marriage. Her interest in convenient and effective relief from potential further domestic abuse through a civil protection order entered by a court in the state in which she resides is weighty. Moreover, as the state's civil protection law makes plain, Colorado has a very strong interest in protecting victims of domestic abuse within its borders. The civil protection order statute recognizes that "the issuance and enforcement of protection orders are of paramount importance in the state of Colorado because protection orders promote safety, reduce violence and other types of abuse, and prevent serious harm and death." § 13-14-100.2(1), C.R.S. (2017). Finally, this court has recognized that "all states share a common interest in protecting victims of domestic abuse and providing effective means of redress for such victims." Malwitz, 99 P.3d at 63. Considering all of these factors, permitting a court to enter a civil protection order against an out-of-state defendant who is harassing, threatening, or attempting to coerce a person residing in Colorado as part of a cycle of domestic abuse plainly comports with fair play and substantial justice.

## IV. Conclusion

¶23 We hold that the county court properly exercised personal jurisdiction over Husband pursuant to both Colorado's long-arm statute and the requirements of due process. Accordingly, we reverse the order of the district court vacating the permanent civil protection order, and we remand the case to that court for proceedings consistent with this opinion.