**In re the Marriage of Kara FIFFE, Appellee,**

and

**Patrick Fiffe, Appellant.**

No. 04CA2078.

Colorado Court of Appeals, Div. A.

Dec. 1, 2005.

Certiorari Denied Aug. 14, 2006.

Liggett, Smith & Wilson, P.C., Maureen J. Smith, Fort Collins, Colorado, for Appellee.

Law Office of Chris D. Hefty, Chris D. Hefty, Loveland, Colorado, for Appellant.

DAVIDSON, Chief Judge.

In this action dissolving his marriage to Kara Fiffe (wife), Patrick Fiffe (husband) appeals from the entry of a permanent protection order pursuant to §§ 13–14–103 and 14–10–108, C.R.S.2005. He also appeals from portions of the judgment concerning the division of property and attorney fees. We affirm.

## I. Civil Protection Order

Simultaneously with the filing of the petition for dissolution of marriage, wife sought a civil protection order, alleging acts by husband of "domestic abuse," as defined under § 13–14–101(2), C.R.S.2005, and stalking. In January 2004, the court issued a temporary protection order under § 14–10–108 prohibiting husband from having contact with wife and requiring him to remain at least one hundred yards away from her. The court dissolved the protection order later that month, but advised husband that it would reissue the order if behaviors similar to those alleged in wife's petition occurred in the future.

In August, wife sought reinstatement of the temporary protection order, alleging fear for her physical safety and emotional well-being, contending that husband had continued the stalking and harassing behavior. The record does not show that the court ruled on this request. However, at the permanent orders hearing, wife again requested a protective order on the ground that husband persisted in stalking and harassing her both at work and at home.

In its order granting wife's request, the trial court found a permanent protection order "was necessary for the safety of [wife] and to avoid future incidents of potential harassment of [wife]." The court further found that "there is no necessity for contact between the parties other than as specified" in the court order.

On appeal, husband argues that the wife was required to satisfy the requirements of § 13–14–102(4)(a), C.R.S.2005, before the court could determine whether to grant the renewed request for a permanent civil protection order. Specifically, husband contends, the trial court erred by granting a permanent protection order without making a finding of "imminent danger." We disagree.

Based on the plain language of the statute, we conclude that a finding of imminent danger is a prerequisite only to the issuance of a temporary protection order. Furthermore, we conclude that the record supports the trial court's grant of a permanent protection order against husband.

We review de novo the construction of a statute. *People ex rel. Yeager*, 93 P.3d 589, 593 (Colo.App.2004).

The statutory provisions at issue here, §§ 13–14–102 and 13–14–103, C.R.S.2005, are included in article 14, entitled Civil Protection Orders. This article was enacted by the General Assembly in 1999 to consolidate the various types of civil restraining orders issued by municipal, county, and district courts. *See generally* Linda Johnston, *Statutes Consolidate Civil Restraining Orders*, 28 Colo. Law. 39 (Oct.1999). Sections 13–14–102 and 13–14–103, together with amendments to § 14–10–108 and the repeal of the former § 14–4–103, resulted in a streamlined system of temporary and permanent civil protection orders. *See* §§ 13–14–102, 13–14–103.

As relevant here, § 14–10–108(3), C.R.S. 2005, allows a party in a dissolution of marriage action to seek, and the court to issue, a "temporary or permanent protection order pursuant to the provisions of section 13–14–102."

Section 13–14–102(3.3), C.R.S.2005, in turn, grants the district court in a dissolution of marriage action the authority to issue temporary and permanent protection orders pursuant to § 13–14–102(1.5), C.R.S.2005, and allows a party to request such an order "consistent with any other provision" of the article. Subsection (1.5) provides that a temporary or permanent civil protection order

may be issued for any of the following relevant purposes: to "prevent assaults and threatened bodily harm"; to "prevent domestic abuse"; or to "prevent stalking." Section 13–14–102(1.5)(a)–(b), (d), C.R.S. 2005.

However, the criteria for the issuance of temporary and permanent protection orders are different and are set forth in separate provisions of the statute. Under § 13–14–102(4)(a), the entry of a temporary civil protection order requires a finding of imminent danger. A permanent civil protection order, however, is governed by § 13–14–102(9)(a), C.R.S.2005, which provides:

> If ... the judge or magistrate is of the opinion that [a spouse] has committed acts constituting grounds for issuance of a civil protection order and that unless restrained will continue to commit such acts, the judge or magistrate shall order the temporary civil protection order to be made permanent or order a permanent civil protection order with different provisions from the temporary civil protection order.

This provision, by its plain language, requires only that, to issue a permanent protection order, the court find that the person to be restrained committed acts against the protected person which constitute grounds for issuance of an order under § 13–14–102(1.5), and that these prohibited acts will continue in the absence of a protection order. It contains no requirement of a finding of imminent danger.

The absence of the requirement to show imminent danger in the statute concerning permanent protection orders is consistent with its explicit purpose, which is to prevent future harm to a person seeking protection. See § 13–14–102(1), C.R.S.2005 (legislative declaration). This purpose is served only if the permanent protection order prohibits, inter alia, acts that are not imminent, but are, nonetheless, reasonably likely to recur in the future.

■ Moreover, underlying procedural due process considerations readily explain why a showing of imminent danger is required for the issuance of a temporary protection order, but not for a permanent, protection order. A temporary protection order is usually requested under immediate, urgent circumstances and, thus, most often is ruled upon ex parte. See § 13–14–102(3), C.R.S.2005 ("A motion for a temporary civil protection order shall be set for hearing, which hearing may be ex parte, at the earliest possible time ....."). See also C.R.C.P. 65(b) (temporary restraining order may be issued ex parte only upon a finding of immediate, irreparable harm). Because protection orders necessarily involve a deprivation of liberty or property, ex parte hearings lacking due process safeguards can only be justified by the extreme circumstance of imminent danger. See, e.g., Blazel v. Bradley, 698 F.Supp. 756, 765 (W.D.Wis.1988) (risk of immediate harm necessary for issuance of ex parte temporary restraining order to comply with constitutional due process requirements).

■ In contrast, the statute permits consideration of a permanent protection order only after proper notice and a full hearing. See § 13–14–102(9)(a). Procedural due process does not require a finding of imminent danger when the parties are accorded the requisite constitutional safeguards of notice and an opportunity to be heard. See, e.g., Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 313, 70 S.Ct. 652, 656–57, 94 L.Ed. 865 (1950).

We conclude that, regardless whether the danger to the requesting party is imminent, the statute allows for the issuance of a permanent protection order upon a finding that acts specified in § 13–14–102(1.5) have been committed and are reasonably likely to recur.

We note that courts in other jurisdictions that have considered similar issues under their respective statutes have reached the same or a similar conclusion. See Ritchie v. Konrad, 115 Cal.App.4th 1275, 10 Cal. Rptr.3d 387 (2004) (holding that a protection order may be renewed permanently upon a finding of a "reasonable apprehension of future abuse" and squarely rejecting an "imminent danger" standard because it would fall short of fulfilling the statute's purpose of preventing future acts of abuse); see also Woolum v. Woolum, 131 Ohio App.3d 818, 723 N.E.2d 1135 (1999) (renewing protective order without finding present or imminent

danger of domestic violence); *Bailey v. Bayles,* 18 P.3d 1129 (Utah Ct.App.2001) (affirming issuance of permanent protective order after concluding that fear of abuse was reasonable and real), *aff'd,* 52 P.3d 1158 (Utah 2002).

Accordingly, here, the trial court properly determined that a permanent protection order was necessary to protect wife against future endangering incidents. The record shows the court previously had granted wife's initial temporary protection order on the ground that husband had been harassing and stalking her and, although that order was dissolved, the dissolution was under the condition that the prohibited acts not recur. When, a few months later, wife filed a request to reinstate the temporary protection order, she attached to the motion an exhibit documenting three months of stalking incidents that had occurred after the initial protection order had been dissolved.

■ At the permanent orders hearing, wife renewed her request for a protection order, testifying as to continued acts of harassment and stalking. Although husband denied such incidents at the permanent orders hearing, it was the court's prerogative to weigh and evaluate the parties' credibility. *See, e.g., People v. Harlan,* 109 P.3d 616, 627–28 (Colo.2005).

It would have been preferable if the court's ruling had included a description of the specific acts, and more explicit findings as to why it was reasonable to believe that these acts would recur in the future. Nevertheless, the record is sufficient to support the conclusion that acts committed by husband constituting grounds for issuance of a permanent protection order were reasonably likely to continue in the absence of such an order.

## II. Property Division

We disagree with husband's argument that the property distribution and evaluations conflicted with the parties' prenuptial agreement.

■ Prenuptial agreements should be construed and treated in the same manner as other contracts, and in construing a prenuptial agreement, we must give effect to the parties' intent. *In re Marriage of Dechant,* 867 P.2d 193 (Colo.App.1993).

## A. Medical Insurance

The trial court found that the prenuptial agreement required equal payment of marital debts and equal contribution to marital expenses, including medical expenses. Husband argues that the plain language of the prenuptial agreement required wife to contribute half of the expense to maintain medical insurance and did not contemplate her receiving continued coverage without contribution to the cost.

■ However, the record supports the court's determination that both parties worked for the same company; that, after their marriage, wife was required to discontinue her medical insurance to avoid duplicate coverage; and that wife was carried on husband's coverage at no additional cost to him because husband was required to carry family coverage to insure his two children from a prior marriage. We agree with the trial court that the prenuptial agreement requiring each to contribute to the expense of medical insurance did not require, under these circumstances, a credit to husband for the medical insurance premium deducted from his salary. *See In re Marriage of Dechant, supra.*

## B. Marital Debts and Expenses

Husband also argues that the trial court erred in denying his request to allocate other expenses paid by him because wife admitted that at times he contributed to the marital debts in excess of his equal share. Again, we disagree.

The parties' prenuptial agreement required the parties to "contribute toward a joint account out of which ordinary living expenses shall be paid." Acknowledging this language, the court nevertheless found that it was "impossible to divide all expenses of the parties during their years of marriage and determine the extent of each party's payments and contributions." In the post-trial order, the court elaborated that its determination was based on credibility evaluations of the testimony on that issue.

The record shows that wife testified that the parties contributed equally to the joint account established for the payment of marital expenses. She denied that the parties had agreed to share living expenses equally, however, because husband earned significantly more than she did. She also testified that the parties' joint account had sufficient funds for the minimum payments on the credit cards and that she was not consulted about, nor did she agree to, husband's decision to pay off the outstanding balances. She disagreed that husband had contributed $37,000 more to the parties' living expenses.

Based on this conflicting evidence, we find no error in the trial court's determination that husband was not entitled to an offset for expenses he paid during the two-year marriage. *See In re Marriage of Mohrlang*, 85 P.3d 561 (Colo.App.2003) (credibility determinations lie within the sole discretion of the trial court).

### C. Valuation of Personal Property

The record also supports the court's valuation of personal property and automobiles.

■ The trial court has discretion to choose the property valuation of one party over that of the other or to make its own reasonable determination of value, and such determination will be upheld on appeal unless clearly erroneous. *In re Marriage of Page*, 70 P.3d 579 (Colo.App.2003).

First, husband argues that wife was not entitled to a credit of $1680 to offset property retained by him because she did not object to his accounting of the personal property.

However, the trial court found that the prenuptial agreement contained balance sheets listing the property owned by each party prior to the marriage and that each party testified as to property retained by the other after they separated. The court credited wife's testimony that she provided the majority of the household items prior to the marriage. The court further found from the testimony that there was no way for it to distinguish individual items.

Based on the credibility of wife's testimony, the court found a disparity in personal property retained by husband in the amount of $1680. The trial court also resolved the conflicting testimony concerning the value of the parties' respective vehicles in wife's favor. These determinations were within the court's discretion. *See In re Marriage of Mohrlang, supra.*

Second, we disagree with husband's argument that hail damage to wife's vehicle that occurred prior to permanent orders constituted "dissipation of assets." *See In re Marriage of Lockwood*, 971 P.2d 264 (Colo.App. 1998). We also disagree that reducing the value of wife's automobile by $2500 for the hail damage will result in a double credit to her when she obtains insurance proceeds for such damage. As the trial court found, the parties submitted no evidence regarding insurance coverage. *See In re Marriage of Zappanti*, 80 P.3d 889 (Colo.App.2003) (it is the parties' duty to present the trial court with requisite data).

We decline to consider husband's argument, raised for the first time on appeal, that there was insufficient evidence to establish the $2500 reduction applied by the court. *See In re Marriage of Lafaye*, 89 P.3d 455 (Colo.App.2003).

### III. Attorney Fees

The prenuptial agreement included the following provision: "If either of us should retain counsel for the purpose of enforcing, or preventing the breach of, this agreement or for any other judicial action relating to it, then the prevailing party shall be entitled to reimbursement for costs, reasonable attorney's fees and expenses incurred."

■ However, the record indicates that despite this provision, the parties agreed in the case management order dated March 15, 2004, that each party would be responsible for his or her own attorney fees. Therefore, husband waived any argument here that the trial court erred in refusing to allocate fees under the agreement. Moreover, we note, in dissolution cases there is no traditional "prevailing party," and husband would not be entitled to fees under the agreement in any event.

We deny wife's request for attorney fees based on a frivolous and groundless appeal or based on husband's breach of the prenuptial agreement in appealing the judgment.

The judgment is affirmed.

Judge KAPELKE* and Judge NIETO * concur.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2005.