20CA1985 Marr of Alexander 11-10-2021 COLORADO COURT OF APPEALS Court of Appeals No. 20CA1985 Weld County District Court No. 20DR410 Honorable Kimberly B. Schutt, Judge In re the Marriage of Jeremy E. Alexander, Appellant, and Malissa Marie Alexander, n/k/a Malissa Marie McAllister, Appellee. ORDER AFFIRMED Division VII Opinion by JUDGE PAWAR Navarro and Grove, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced November 10, 2021 Kraemer, Golden & O’Brien, LLC, Michael M. O’Brien, Fort Collins, Colorado, for Appellant Sandra L. Wright, LLC, Sandra L. Wright, Arvada, Colorado, for Appellee 
1 ¶ 1 Jeremy E. Alexander (husband) appeals the permanent protection order entered in connection with the dissolution of his marriage to Malissa Marie Alexander, now known as Malissa Marie McAllister (wife). We affirm. I. Background ¶ 2 In 2020, wife petitioned to dissolve the parties’ five-year marriage. A few months later, wife obtained a temporary protection order against husband, alleging domestic abuse and stalking. ¶ 3 After a permanent protection order hearing, the district court entered a permanent protection order against husband. The district court found by a preponderance of the evidence that husband had committed acts constituting grounds for entering a protection order and that, unless restrained, he would continue to commit acts designed to intimidate wife or retaliate against her. II. Permanent Protection Order ¶ 4 Husband contends the district court abused its discretion by entering a permanent protection order against him because there was insufficient evidence to establish that he committed acts constituting domestic abuse or stalking or that he would continue to do so unless restrained. We disagree. 
2 A. Legal Standards ¶ 5 The district court has authority to issue a protection order in a dissolution case. See § 13-14-104.5(5), C.R.S. 2021; § 14-10-
108(3), C.R.S. 2021. ¶ 6 As relevant here, the court may enter a temporary or a permanent protection order to prevent domestic abuse or stalking. § 13-14-104.5(1)(a)(II), (V). “Domestic abuse” includes “any act, attempted act, or threatened act of violence, stalking, harassment, or coercion that is committed . . . against another person . . . with whom the actor is involved or has been involved in an intimate relationship.” § 13-14-101(2), C.R.S. 2021. ¶ 7 “Stalking” includes any act, attempted act, or threatened act described in section 18-3-602, C.R.S. 2021. § 13-14-101(3). Under that statute, a person commits stalking if, as relevant here, the person knowingly “[r]epeatedly follows, approaches, contacts, . . . or makes any form of communication with another person [or] a member of that person’s immediate family . . . in a manner that would cause a reasonable person to suffer serious emotional distress and does cause that person [or] a member of that person’s immediate family . . . to suffer serious emotional distress.” § 18-3-
3 602(1)(c). “Immediate family” includes the person’s parent. § 18-3-
602(2)(c). ¶ 8 ‘“[C]oercion’ includes compelling a person by . . . intimidation to engage in conduct from which the person has the right or privilege to abstain, or to abstain from conduct in which the person has a right or privilege to engage.” § 13-14-101(2). Harassment includes following a person in a public place or initiating communication with the person in a manner intended to harass the person. § 18-9-111(1)(c), (e), C.R.S. 2021. ¶ 9 The court shall make a temporary protection order permanent if it finds by a preponderance of the evidence that the restrained party has committed acts constituting grounds to issue a protection order “and that unless restrained will continue to commit such acts or acts designed to intimidate or retaliate against the protected person.” § 13-14-106(1)(a), C.R.S. 2021. ¶ 10 Although we review de novo the district court’s construction of the protection order statutes, it is that court’s prerogative to weigh each party’s credibility. In re Marriage of Fiffe, 140 P.3d 160, 161, 163 (Colo. App. 2005); see also Parocha v. Parocha, 2018 CO 41, ¶ 16. Therefore, we will not disturb the district court’s conclusion 
4 that grounds for granting a permanent protection order exist if that conclusion is supported by the record. See Fiffe, 140 P.3d at 163. B. Preservation ¶ 11 Wife argues that husband did not preserve his argument that grounds for the temporary protection order were not established because he failed to object to the entry of the temporary protection order. We disagree. A temporary protection order may be issued ex parte, § 13-14-104.5(4), as appears to have occurred here. As such, the procedure does not afford the restrained party an opportunity to object to the issuance of the temporary protection order. In any event, husband challenges only the permanent protection order on appeal, not the temporary order. ¶ 12 Further, the permanent protection order statute requires the court to first find that the restrained person “has committed acts constituting grounds for issuance of a civil protection order.” § 13-
14-106(1)(a); see also § 13-14-104.5(1)(a) (listing grounds for both temporary and permanent civil protection orders). Husband has preserved his argument that such grounds were not established at the hearing. 
5 C. Analysis ¶ 13 Husband argues that there was insufficient evidence to establish that he committed domestic abuse or stalking or that he would continue to do so absent a permanent protection order. We conclude that the record supports the district court’s findings. ¶ 14 Wife testified to an incident in which husband pushed her into her car with enough force to cause a dent in the car. She introduced into evidence a photograph of the dented car as well. Although husband testified that he did not push wife into the car but rather “[s]he may have brushed up against” it, the district court found wife’s account of the incident credible. See Parocha, ¶ 16; Fiffe, 140 P.3d at 163. Wife also testified that husband threw his phone against a wall and submitted a picture of the resulting hole in the wall. Although husband argues that these incidents happened long ago, wife testified that they are examples of husband’s “fits of rage” and “flaring tempers” and that there were “so many” other incidents by husband, including “screaming, kicking things, [and] slamming doors” during the parties’ relationship. 
6 ¶ 15 Wife further testified that husband follows her around at her son’s baseball games and stands behind her looking over her shoulder while she uses her phone. Wife’s mother described a specific incident where husband followed her and wife from the baseball field, “got extremely angry,” and started pacing around and yelling at them. Wife’s mother said that this was the last game she attended without her husband, and wife testified that her parents had become “so intimidated by [husband] that they won’t come to their grandchild’s games anymore.” ¶ 16 Contrary to husband’s argument, wife’s mother did not testify to only one incident of harassment or intimidation. In addition to the baseball game incident, wife’s mother, who was a teacher, testified that husband once called her while she was in her classroom. Thinking that “something was really wrong,” wife’s mother left her class to take the call. Husband asked her if she knew where wife was, what she was doing, and who she was with. He told her that he had obtained wife’s cell phone records, knew she was having an affair, and was on his way to confront her. Wife’s mother said she panicked because husband was very upset, and she knew he carried a gun. She called wife right away because 
7 she “was terrified that something bad was going to happen.” Wife’s mother further testified that husband came to her house the following month, asked her not to tell wife he was coming, and “was adamant” that he and wife were not getting divorced. When wife’s mother expressed her disagreement, husband “got really angry,” jumped off the couch, and paced frantically around the room yelling at her. ¶ 17 During her testimony, wife submitted a letter husband gave her stating that he realized how “emotionally abusive” he was to her and her child and that he was “disgusted and embarrassed” by his behavior. Wife also testified that husband continues to contact her daily, including three-to-five-page emails, and that he comes to her home uninvited. As wife points out, husband’s Exhibit A (email exchanges between the two of them) supports her testimony concerning his excessive contacts with her and repeated efforts to coerce her into dismissing the dissolution case. Wife testified that although she repeatedly tells husband not to contact her and to leave her alone, he continues to contact her. She provided one example of a phone call during which he told her that he had obtained three months of her text messages and that if she did not 
8 change her mind about the divorce, he would share them with her son and family. ¶ 18 The record supports the court’s findings and its entry of the permanent protection order. Although husband provided conflicting testimony and denied many of wife’s and her mother’s allegations, it is the district court’s prerogative, and not ours, to resolve such factual conflicts. See Parocha, ¶ 16; Fiffe, 140 P.3d at 163; see also M.D.C./Wood, Inc. v. Mortimer, 866 P.2d 1380, 1383-
84 (Colo. 1994) (noting trial court’s superior ability to determine credibility and resolve conflicting evidence). ¶ 19 Husband asserts wife’s claim that he once gave her “a bloody mouth” is not supported by the record because wife did not testify about it. However, the incident is referenced in husband’s Exhibit A, which is part of the record. ¶ 20 Husband further argues that even assuming his past conduct justified the temporary protection order under section 13-14-
104.5(1)(a), it was not established at the hearing that, unless further restrained, he would continue to engage in such conduct. See § 13-14-106(1)(a). We are not persuaded. The permanent protection order statute requires the court to find that, unless 
9 restrained, husband will either continue to engage in the acts that led to the temporary order or that he will engage in “acts designed to intimidate or retaliate” against wife. Id. And, here, the court found that husband would continue to commit acts designed to intimidate or retaliate against wife and that a protection order was the only way to stop him. This finding was supported by wife’s evidence concerning husband’s threat to share her text messages with her son and family; his continued, unwanted contacts with her; and his contacts with her mother. ¶ 21 Last, we note that wife was adamant that she needed protection from husband. She implored the court to enter a permanent protection order, stating that she had done everything in her power to try to stop husband’s behavior and had no recourse left other than the courts. Further, wife testified that she “was afraid” of husband’s behavior, and her mother described his behavior as “terrif[ying].” See § 18-3-602(1)(c) (defining stalking as repeatedly following, contacting, or communicating with a person or a member of the person’s family in a manner that would cause a reasonable person serious emotional distress and that does cause 
10 the person or the member of the person’s immediate family serious emotional distress). ¶ 22 In sum, based on the totality of the evidence presented at the hearing, both from the witnesses and the written exhibits, we conclude that the district court did not abuse its discretion by entering the permanent protection order against husband. See § 13-14-104.5(1)(a)(II), (V); § 13-14-106(1)(a); cf. Parocha, ¶¶ 6, 16 (upholding county court’s finding that, in the context of the past pattern of domestic abuse, the wife was credible in perceiving the husband’s communications as harassing and threatening). III. Appellate Attorney Fees ¶ 23 Wife requests her attorney fees and costs incurred on appeal under C.A.R. 38(b), contending that husband’s appeal is frivolous. We decline to award fees or double costs. Although husband has not prevailed on appeal, we do not view his arguments as frivolous so as to justify a fee award under the rule. See Mission Denver Co. v. Pierson, 674 P.2d 363, 365 (Colo. 1984) (“Standards for determining whether an appeal is frivolous should be directed toward penalizing egregious conduct without deterring a lawyer from vigorously asserting his client’s rights.”); In re Estate of 
11 Shimizu, 2016 COA 163, ¶ 34 (noting that appellate fees are “appropriate only in clear and unequivocal cases where no rational argument is presented”). ¶ 24 Appellate costs will be assessed under C.A.R. 39(a)(2). IV. Conclusion ¶ 25 The order is affirmed. JUDGE NAVARRO and JUDGE GROVE concur.