The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
January 30, 2025

## 2025COA10

**No. 23CA1561, *In re Marriage of Wiggs* — Family Law —
Dissolution — Permanent Protection Order; Appeals — Final
Appealable Order — Separate and Independent Relief**

A division of the court of appeals holds that a permanent
protection order issued in an ongoing dissolution of marriage case
constitutes a final, appealable order.  The division concludes that a
motion for a protection order effectively commences a discrete
action for separate and independent relief.  Because a permanent
protection order finally disposes of those proceedings, it is final and
appealable, even if the dissolution proceeding remains pending.

Reviewing the permanent protection order on the merits, the
division concludes that the evidence was sufficient to support it.

Court of Appeals No. 23CA1561
Arapahoe County District Court No. 23DR30847
Honorable Cajardo Lindsey, Judge

In re the Marriage of

Jennifer Lee Wiggs,

Appellee,

and

Kyle William Wiggs,

Appellant.

ORDER AFFIRMED

Division II
Opinion by JUDGE SCHOCK
Fox and Johnson, JJ., concur

Announced January 30, 2025

Anne Whalen Gill, L.L.C., Anne Whalen Gill, Castle Rock, Colorado, for
Appellee

Griffiths Law PC, Suzanne Griffiths, Christopher J. Griffiths, Kimberly A.
Newton, Lone Tree, Colorado, for Appellant

¶ 1     Kyle William Wiggs (husband) appeals the permanent protection order (PPO) entered in the dissolution of marriage proceeding between him and Jennifer Lee Wiggs (wife). Before addressing the merits of husband's appeal, we must first determine for the first time in a published Colorado opinion whether a PPO issued before permanent orders in an ongoing dissolution proceeding is a final, appealable order. Given the separate and independent nature of the PPO proceedings, we hold that it is. We therefore address the merits of husband's appeal and affirm.

## I.     Background

¶ 2     One month after filing a petition to dissolve the parties' marriage, wife filed a motion for a protection order against husband in the dissolution proceeding, alleging domestic abuse and stalking. She alleged that husband had grabbed her and their youngest child during an incident three months earlier and that he had continued to access the marital home's camera system after moving out of the home. She also alleged prior instances of physical confrontations.

¶ 3     The district court granted a temporary protection order and set the case for a PPO hearing. At the beginning of that hearing, the court asked if the parties would agree to continue the temporary

protection order for up to twelve months.  *See* § 13-14-106(1)(b), C.R.S. 2024.  They did not agree, so the hearing went forward.

¶ 4    After the hearing, at which husband and wife both testified, the district court entered the PPO against husband, with wife as the protected person.  The court did not find either party credible.  But it found by a preponderance of the evidence that husband had committed domestic abuse by physically harassing wife on two occasions: (1) in August 2022, by throwing her against a wall (and then lying to police about what happened); and (2) in April 2023, by grabbing her on the arm and leaving a bruise.  The court also found that, "unless restrained, husband will continue to commit such acts or acts designed to intimidate or retaliate against wife."

¶ 5    The PPO required husband to stay at least one hundred yards away from wife, her workplace, and the marital home where wife was living.  It permitted each party to attend their children's events only during the party's own parenting time and required the parties to communicate exclusively through the Talking Parents online application.  The PPO did not restrain husband as to the children or include any orders concerning parenting time or decision-making.

## II. Wife's Motion to Dismiss

¶ 6     Wife moved to dismiss this appeal for lack of a final, appealable order. She asserts that a PPO issued in a dissolution of marriage proceeding is not a final judgment for purposes of appeal until the dissolution action has been finally resolved through permanent orders. We disagree as to the PPO issued in this case.[1]

### A. Finality

¶ 7     As a general matter, our jurisdiction is limited to the review of final judgments. *L.H.M. Corp., TCD v. Martinez*, 2021 CO 78, ¶ 14; *see also* § 13-4-102(1), C.R.S. 2024; C.A.R. 1(a)(1). A judgment is final if it "ends the particular action in which it is entered, leaving nothing further for the court pronouncing it to do in order to completely determine the rights of the parties involved in the proceeding." *Schaden v. DIA Brewing Co.*, 2021 CO 4M, ¶ 46 (citation omitted). Ordinarily, that means "an entire case must be

---

[1] We do not consider PPOs that include the parties' children as protected persons or that address parenting time or decision-making responsibility. *See* § 14-10-129(1)(a)(I), C.R.S. 2024 ("[T]he court may make or modify an order granting or denying parenting time rights whenever such order or modification would serve the best interests of the child."); § 14-10-131, C.R.S. 2024 (outlining procedures for modification of decision-making responsibility).

decided before any ruling in that case may be appealed." *In re Marriage of Farr*, 228 P.3d 267, 268 (Colo. App. 2010).

¶ 8     But while our subject matter jurisdiction is governed by statute, finality is determined by case law. *Chavez v. Chavez*, 2020 COA 70, ¶ 21. And in determining whether an order is final, we must look to the legal effect of the order and not merely its form. *Luster v. Brinkman*, 250 P.3d 664, 666 (Colo. App. 2010). Thus, an order is final for purposes of appeal when it "finally disposes of the particular action and prevents further proceedings as effectually as would any formal judgment." *Id.* (citation omitted).

¶ 9     In dissolution proceedings, an order generally is not final and appealable until the district court has issued permanent orders resolving all outstanding issues between the parties, including parental responsibilities, child support, maintenance, disposition of property, and attorney fees. *In re Marriage of Hill*, 166 P.3d 269, 272 (Colo. App. 2007); *see also Est. of Burford v. Burford*, 935 P.2d 943, 955 (Colo. 1997) (holding that a dissolution decree entered before permanent orders is not final for purposes of appellate review absent a proper C.R.C.P. 54(b) certification). That is because such

4

issues are "inextricably intertwined" and "part and parcel of dissolving the marriage." *Hill*, 166 P.3d at 272 (citation omitted).

¶ 10    There are, however, some established exceptions to the rule that a final order must dispose of the *entire* litigation. For example, temporary orders that establish the parties' "financial rights and obligations" pending permanent orders — including temporary orders for maintenance, child support, and attorney fees — "are reviewable as final judgments even if there has not been a final judgment in the form of a decree of dissolution or entry of permanent orders." *In re Marriage of Mockelmann*, 944 P.2d 670, 671 (Colo. App. 1997). Though issued in an ongoing proceeding, such orders are immediately appealable because they involve "separate and independent relief." *Id.* at 672 (citation omitted).

¶ 11    In other distinctive scenarios outside the dissolution context, certain orders have been deemed to be final and appealable when they terminate a discrete proceeding embedded within another. *See Scott v. Scott*, 136 P.3d 892, 894 (Colo. 2006); *In re Estate of Gadash*, 2017 COA 54, ¶¶ 14, 36 (holding that probate court's order resolving discrete petition was final); *Luster*, 250 P.3d at 667 (holding that a postjudgment collection order is final if it "end[s] the

particular *part of the action* in which it is entered") (emphasis added); *People v. Proffitt*, 865 P.2d 929, 931 (Colo. App. 1993) (holding that order denying motion for contempt was final).

### B. Permanent Protection Orders in Dissolution Proceedings

¶ 12     The Uniform Dissolution of Marriage Act (UDMA) authorizes a district court to issue a temporary or permanent protection order under sections 13-14-100.2 to -111, C.R.S. 2024.  § 14-10-108(3), C.R.S. 2024.  A party to a dissolution of marriage proceeding may seek such an order by filing a motion and accompanying affidavit in the dissolution proceeding.  § 13-14-104.5(5), C.R.S. 2024.

¶ 13     The issuance of a protection order is governed not by the UDMA but by the statutory procedures governing civil protection orders more generally.  At the time of the district court proceedings in this case, a temporary protection order could be issued upon a finding that "an imminent danger exists to the person or persons seeking protection."  § 13-14-104.5(7)(a), C.R.S. 2024 (version effective until Jan. 1, 2025).[2]  In a dissolution proceeding, the court

---

[2] The statute has since been amended to replace the finding of "imminent danger" with a finding of "a risk or threat of physical harm or the threat of psychological or emotional harm."  Ch. 330, sec. 4, § 13-14-104.5(7)(a), 2024 Colo. Sess. Laws 2232.

may continue a temporary protection order until the final decree and permanent orders if the parties agree. § 13-14-106(1)(c). Otherwise, the court must hold a hearing and issue a PPO if it "finds by a preponderance of the evidence that the respondent has committed acts constituting grounds for the issuance of a civil protection order and that unless restrained the respondent will continue to commit the acts or acts designed to intimidate or retaliate against the protected person." § 13-14-106(1)(a).

¶ 14    Once a PPO has been issued, the protected party may move to modify or dismiss it at any time, but the restrained party may not do so for two years. § 13-14-108(2), C.R.S. 2024.

### C.    Finality of the PPO

¶ 15    A PPO issued in a separate and independent action is a final and appealable order because it represents the court's "final ruling regarding the plaintiff's entitlement to a civil protection order." *Martin v. Arapahoe Cnty. Ct.*, 2016 COA 154, ¶¶ 22-23.  The question we must answer is whether the result is different when the PPO is instead issued in an ongoing dissolution proceeding.

¶ 16    We conclude that it is not.  As with a PPO in a separate action, the legal effect of the PPO in this case was to finally dispose of the

protection order proceedings and "leave nothing further for the court . . . to do in order to completely determine the rights of the parties" as to the protection order. *Luster*, 250 P.3d at 666.

¶ 17 Even when filed within a dissolution of marriage proceeding, a motion for a protection order effectively commences a discrete action for "separate and independent relief." *Mockelmann*, 944 P.2d at 672 (citation omitted). The protection order proceedings are initiated by a separate filing, governed by a separate statutory scheme, and concern a different subject matter. *Cf. Gadash*, ¶¶ 29-30 (holding that petition initiated discrete proceeding where it was filed separately, raised distinct claims, and "neither overlapped nor involved the same subject matter"). Indeed, a party may choose to seek such relief by filing a separate action. § 13-14-104.5(1), (3).

¶ 18 Thus, unlike orders concerning parental responsibilities, child support, maintenance, and the disposition of property, the protection order issues are not "part and parcel of dissolving the marriage." *Hill*, 166 P.3d at 272. To the contrary, they solely concern the safety of the protected person. *See* § 13-14-100.2(1).

¶ 19 Moreover, unlike other orders issued during the pendency of a dissolution proceeding, the default assumption is that the PPO will

*not* be revisited in the permanent orders. Although the district court retains jurisdiction to modify or dismiss the PPO, and wife may request modification at any time, husband may not move to modify or dismiss the PPO for two years. *See* § 13-14-108(2). Nor is the PPO one of the issues the district court must consider in connection with the entry of the decree of dissolution. *See* § 14-10-106(1)(b), C.R.S. 2024. Even if the court could modify portions of the PPO that are inconsistent with the permanent orders — for example, if it awards husband the marital home he is excluded from — the core of the PPO (i.e., the restraints on husband for the protection of wife) generally will be unaffected by the entry of permanent orders. *Cf. Hill,* 166 P.3d at 271 (noting that an outstanding issue "does not prevent finality when its resolution will not change or moot the determinations contained in the order").

¶ 20 In contrast, temporary orders terminate when the final decree is entered. § 14-10-108(5)(c); *see also In re Marriage of Salby,* 126 P.3d 291, 295 (Colo. App. 2005) (holding that temporary orders may not be appealed after permanent orders are entered). And temporary parenting time orders — which are not final and appealable — may be modified at any time. *See* § 14-10-129(1)(a)(I),

9

C.R.S. 2024; *In re Marriage of Fickling*, 100 P.3d 571, 574 (Colo. App. 2004) (holding that temporary parenting time orders do not grant "parenting time rights" that "stay in effect until one party establishes a change in circumstances"); *In re Marriage of Adams*, 778 P.2d 294, 295 (Colo. App. 1989) ("An order awarding temporary custody is not an order that may be appealed to this court.").

¶ 21    In short, like temporary financial orders, a PPO has an immediate and substantial effect on the rights and obligations of the parties. *See Mockelmann*, 944 P.2d at 671-72. But unlike temporary financial orders, those rights and obligations will often remain in effect beyond the permanent orders. We see no reason why a *permanent* protection order should not be deemed final when it is less subject to modification than the *temporary* financial orders that are. *Cf. In re Marriage of Henne*, 620 P.2d 62, 64 (Colo. App. 1980) (holding that an "order prohibiting the mother from leaving this jurisdiction is . . . subject to review because, until the order is modified . . . it finally resolves the mother's rights relative thereto").

¶ 22    Finally, we highlight one other point that we allude to above. Although wife chose to file her motion for a protection order in the dissolution proceeding, a petitioner may seek a protection order by

filing a complaint in any county where venue is proper. *See* § 13-14-104.5(3). When the petitioner chooses the latter path, there is no question that the PPO is final and appealable. *Martin*, ¶ 23. If we were to conclude that the PPO in this case is *not* final and appealable, the restrained party's ability to appeal would turn entirely on the forum in which the petitioner chooses to seek relief, even though the order's effect on the parties would be the same.

¶ 23　　Wife contends that the solution to all these concerns is certification of the PPO as a final judgment under C.R.C.P. 54(b). And it is true that "[w]hen confronted with circumstances where the jurisdiction of the court of appeals is uncertain, [the supreme court has] generally required Rule 54(b) certification." *Scott*, 136 P.3d at 898. But for two reasons, we do not think such certification is required. First, a PPO in a dissolution proceeding is not a neat fit for Rule 54(b). As we have explained, a motion for a protection order is not merely one of several dissolution-related "claims for relief" but rather the trigger for a separate and independent statutory process and remedy. Second, for many of the same reasons, if a PPO were treated as "one claim for relief" for purposes of Rule 54(b), it would by its nature almost inevitably warrant

11

certification in every case. *See Wolf v. Brenneman*, 2024 CO 31, ¶ 16 (listing requirements of a certification order). Given the finality of other separate and independent relief in dissolution proceedings, *see Mockelmann*, 944 P.2d at 672, requiring Rule 54(b) certification of a PPO would place form over function, contrary to our obligation to look to the "legal effect of the order," *Luster*, 250 P.3d at 666.

¶ 24    Thus, the PPO issued in this case is a final and appealable order, notwithstanding the pendency of the dissolution proceeding. We therefore deny wife's motion to dismiss the appeal. We likewise deny wife's request for attorney fees in connection with the motion and "ancillary litigation" under section 13-17-102, C.R.S. 2024.

### III.    Permanent Protection Order

¶ 25    Turning to the merits of husband's appeal, husband contends that the evidence was insufficient to support the district court's findings that (1) he committed acts of domestic abuse; and (2) unless restrained, he will continue to commit such acts or acts designed to intimidate or retaliate against wife. We disagree.

### A.    Applicable Law and Standard of Review

¶ 26    As noted above, to enter a PPO, a district court must find two elements by a preponderance of the evidence: (1) the respondent

has committed acts constituting grounds for the issuance of a civil protection order; and (2) unless restrained, the respondent will continue to commit those acts or other acts designed to intimidate or retaliate against the protected person. § 13-14-106(1)(a).

¶ 27    One ground for issuing a civil protection order is "[t]o prevent domestic abuse." § 13-14-104.5(1)(a)(II). "Domestic abuse," at the time of the district court proceedings, included "any act, attempted act, or threatened act of violence, stalking, harassment, or coercion that is committed . . . against another person . . . with whom the actor is involved or has been involved in an intimate relationship." § 13-14-101(2), C.R.S. 2024 (version effective until Jan. 1, 2025).[3] Although the civil protection order statutes do not define harassment, a person commits the crime of harassment if, "with intent to harass, annoy, or alarm another person, [the actor] . . . [s]trikes, shoves, kicks, or otherwise touches a person or subjects [the person] to physical contact." § 18-9-111(1)(a), C.R.S. 2024.

---

[3] The definition of "[d]omestic abuse" has been amended to remove the clause, "with whom the actor is involved or has been involved in an intimate relationship." Ch. 330, sec. 2, § 13-14-101(2), 2024 Colo. Sess. Laws 2230. That clause is now part of a new definition of "[d]omestic violence." § 13-14-101(2.1), C.R.S. 2024.

13

¶ 28    A PPO does not require a finding of imminent danger. *In re Marriage of Fiffe*, 140 P.3d 160, 162 (Colo. App. 2005); *see also* § 13-14-106(1)(a). Nor must the prohibited *acts* be imminent. *Fiffe*, 140 P.3d at 162. Rather, the second element of a PPO is satisfied if such acts are "reasonably likely to recur in the future." *Id.*

¶ 29    In deciding whether to issue a PPO, it is the district court's prerogative to weigh the evidence and evaluate the parties' credibility. *Parocha v. Parocha*, 2018 CO 41, ¶ 16. We will not disturb the district court's factual findings that grounds for a PPO exist if those findings have record support. *Fiffe*, 140 P.3d at 163.

## B.    Domestic Abuse

¶ 30    The district court found that husband committed two acts of domestic abuse by harassing wife through physical contact.

¶ 31    The first incident occurred in August 2022. The court found that husband threw wife against a wall, "subject[ing] her to physical contact with [the] wall" with the intent to harass her. The court also found that when wife said she was calling 911, husband called 911 first and then lied to police about what had happened, falsely claiming wife had punched him, which resulted in wife's arrest.

¶ 32     The second incident occurred in April 2023 in the driveway of the marital home.  The court found that husband tried to grab the parties' infant child from wife multiple times, and at one point, caused the parties to be "pinned to one another," thus "interfering with wife's personal space."  The court also found that, "with intent to harass and alarm wife, [husband] grabbed her on her arm leaving a bruise."  Throughout the altercation, husband was making disparaging comments about wife to her and the parties' children.

¶ 33     These findings have ample record support.  As to the August 2022 incident, wife testified that the parties were vacationing in Vail with their children, and husband had been drinking heavily.  She explained that husband became "infuriated" after a verbal altercation and "shoved [her] up against the wall."  He put his finger in her face while calling her derogatory names and screaming that her kids "don't love [her]."  As she yelled that she was going to call 911, husband called 911 and hung up.  When 911 called back, husband told police wife had punched him, and she was arrested.

¶ 34     The record also supports the court's finding that husband lied to police about the incident.  The district court took judicial notice of husband's statement in wife's criminal case that wife had

*accidentally* hit him when trying to swat his finger out of her face. The court also admitted a report from the Colorado Department of Human Services summarizing an interview with husband in which he similarly said that wife had no intention of hitting him and had only "swatted at his hand to get him out of her face." Although husband claimed otherwise at the PPO hearing, the court found wife more credible as to this incident. It is the district court's role, not ours, to resolve such factual conflicts. *See Parocha*, ¶ 16.

¶ 35 The April 2023 incident was caught on video by the parties' home security system, and the video was admitted into evidence. That video supports the district court's findings. It shows husband following wife around the driveway and repeatedly approaching her as she walks away with the parties' child. At multiple points, the video shows husband making physical contact with wife as he attempts to grab the child. Wife also testified that husband grabbed her arm and pulled her toward him, causing her injury. And a responding police officer testified that wife had a bruise on her arm, which he described as a "red mark . . . like a fingerprint."

¶ 36 Husband contends that the physical contact was not sufficiently persistent, repeated, or distressing to show an "intent to

16

harass, annoy, or alarm" wife.  § 18-9-111(1)(a).  We disagree.  Not only did both incidents involve physical contact, but that physical contact was combined with verbal insults and attacks — over the course of several minutes in the case of the April 2023 incident.

¶ 37    Husband is also incorrect that the district court did not make findings to this effect.  As to the April 2023 incident, the court found that husband grabbed wife "with intent to harass and alarm" her.  As to the August 2022 incident, the court found that husband "committed harassment under [section] 18-9-111(1)(a) with intent to harass wife."  Implicit in that finding is that, by his conduct, husband intended to "annoy[], alarm[], or cause[] substantial emotional distress" to wife.  *People v. Moreno*, 2022 CO 15, ¶ 20 (citation omitted).  The record supports those findings.

¶ 38    We likewise reject husband's suggestion that *Moreno* precluded the district court from finding domestic abuse based on husband's intent to harass wife.  *Moreno* invalidated the phrase "intended to harass" in section 18-9-111(1)(e) — which concerns harassing *communication* — as an unconstitutionally overbroad restriction on protected speech.  *Id.* at ¶ 1.  It has no application to section 18-9-111(1)(a), which prohibits harassing *physical contact.*

*See Moreno*, ¶ 8 (noting that, by invalidating the phrase in question, the court was "preserv[ing] the remainder of the statute").

¶ 39   For similar reasons, the district court also did not err by finding that the PPO involved an act of "domestic violence," as defined in section 18-6-800.3(1), C.R.S. 2024.  Domestic violence includes any crime against a person "when used as a method of coercion, control, punishment, intimidation, or revenge directed against a person with whom the actor is or has been involved in an intimate relationship." § 18-6-800.3(1).[4]  Given wife's testimony and husband's demeanor and language in the April 2023 video, there was ample record support for the finding that husband's acts of harassment were intended to coerce, control, or intimidate wife.

## C.   Continue to Commit Such Acts

¶ 40   The record is also sufficient to support the district court's finding that, unless restrained, husband is reasonably likely to

---

[4] The civil protection order statutes were recently amended to include a new definition of domestic violence.  *See* § 13-14-101(2.1).  But that amendment was not yet in effect at the time of the district court proceedings, and the PPO included a finding of "an act of domestic violence, as defined in § 18-6-800.3(1)," C.R.S. 2024.

commit further acts of domestic abuse or other acts designed to intimidate or retaliate against wife. *See Fiffe*, 140 P.3d at 162-63.

¶ 41    As detailed above, the district court found that husband committed domestic abuse against wife on two occasions within eight months, and on the first occasion, lied to police to have wife arrested.[5]  In addition, wife testified that after the August 2022 incident, husband had been "emboldened" and had repeatedly threatened to call 911 on her again and "have [her] kids taken away from her."  She testified that this was "terrifying."  Wife also testified that after the temporary protection order was entered, husband filed a police report falsely accusing her of breaking into his home.[6]  While this testimony did not concern physical harassment, it is consistent with husband's conduct during the other two incidents.

---

[5] Although the district court focused on the specific alleged instances of domestic abuse, wife also testified that husband had been "very abusive" before the August 2022 incident.

[6] Contrary to husband's assertion, the district court did not reject this testimony.  Although the court did not find wife credible as a general matter, it did not refer to this portion of her testimony.  *See In re Marriage of Collins*, 2023 COA 116M, ¶ 21 ("[W]e presume that the court considered all the evidence presented.").  The police officer whom the court did find credible did not testify about this report.

¶ 42    Moreover, wife testified about another incident after the parties separated in which husband had been watching wife on the marital home surveillance system and later sent her text messages repeating a phrase she had used at the home — another incident wife testified "terrified" her. Although the district court did not find this incident sufficiently distressing to constitute stalking under section 18-3-602(1)(c), C.R.S. 2024, it is nevertheless indicative of husband's continued conduct toward wife after their separation.

¶ 43    Husband asserts that there was no basis for concluding he would harass wife again in the future because he had done so on "just two occasions," the parties were now separated, and the PPO was not based on any act that occurred after the separation. But none of these facts foreclose the district court's finding. Certainly, acts of domestic abuse may occur after separation.[7] And although the court focused on two specific instances of domestic abuse, the evidence we describe above — concerning additional acts both before and after the parties' separation — provides further support

---

[7] Needless to say (but we think it worth saying anyway), we reject husband's sweeping and unsupported assertion that the second prong of a PPO will "almost universally fail" in dissolution cases after the parties separate and are living in separate homes.

for the finding that such acts are "reasonably likely to recur in the future." *Fiffe*, 140 P.3d at 162. So long as there is record support, it is for the district court to make that determination. *Id.* at 163.

¶ 44 Finally, husband argues that the district court's findings were insufficient because it did not explain the basis for its conclusion. But although it would have been preferable for the court to make "more explicit findings as to why it was reasonable to believe that these acts would recur in the future," the district court's findings and the record as a whole are sufficient to sustain the PPO. *See id.*

## IV. Husband's Other Contentions

¶ 45 Husband also contends that the district court erred by failing to admit "numerous pages of text messages" that would have refuted wife's allegations. But he does not identify those text messages, much less explain *why* they were material to the court's decision — particularly when the court did not find wife credible anyway. We therefore do not consider this undeveloped argument. *See Vallagio at Inverness Residential Condo. Ass'n v. Metro. Homes, Inc.*, 2017 CO 69, ¶ 40. To the extent husband challenges the district court's decision to give "little to no weight" to the text message exhibit that was admitted, the weight to be afforded

evidence is a matter within the sole discretion of the district court. *See In re Marriage of Lewis*, 66 P.3d 204, 207 (Colo. App. 2003).

¶ 46　　Husband's final argument is that the district court abused its discretion by limiting him to forty minutes to present his case (which was the same amount of time given to wife). *See Maloney v. Brassfield*, 251 P.3d 1097, 1102 (Colo. App. 2010) (reviewing time limits for an abuse of discretion). But he did not object to the adequacy of the time limitation — originally thirty minutes per side — at the outset of the hearing. *See id.* And the only time his counsel requested additional time, the court granted that request.

¶ 47　　A party seeking additional time beyond previously imposed time limits generally must make a "sufficiently detailed proffer" identifying "the evidence that is in danger of being excluded." *Id.* at 1103, 1105. Husband did not make any such proffer in the district court. Even on appeal, he does not explain what evidence he was unable to present. Nor does he address the other factors relevant to our review of the adequacy of time limits. *See id.* at 1103. Thus,

we conclude that the district court did not abuse its discretion by allocating to both parties forty minutes to present their case.[8]

## V.    Disposition

¶ 48    The permanent protection order is affirmed.

JUDGE FOX and JUDGE JOHNSON concur.

---

[8] The district court's decision not to count the playing of the video of the April 2023 incident against either party's time limit, where both parties wanted to play different portions of it, was also well within the court's discretion. *See Maloney v. Brassfield*, 251 P.3d 1097, 1101 (Colo. App. 2010) (noting district court's discretion over conduct of trial); CRE 611(a) ("The court shall exercise reasonable control over the mode and order of . . . presenting evidence.").