25CA0236 Marriage of Fritsch 05-14-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0236
City and County of Denver District Court No. 23DR30478
Honorable Andrew P. McCallin, Judge

---

In re the Marriage of

David Fritsch,

Appellee,

and

Brittany Fritsch,

Appellant.

---

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division IV
Opinion by JUDGE FREYRE
Brown and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 14, 2026

---

Searcy Friedman Law, Christina L. Friedman, Denver, Colorado, for Appellee

Palmer Family Law, PLLC, Michael K. Palmer, Parker, Colorado, for Appellant

¶ 1 In this dissolution of marriage case between Brittany Fritsch (wife) and David Fritsch (husband), wife appeals the portions of the district court's permanent orders concerning the division of the marital estate and her award of spousal maintenance. We affirm the portion of the order regarding the division of the marital estate, but we reverse the portion of the order regarding spousal maintenance. We remand the case for the recalculation of spousal maintenance.

## I.  Background

¶ 2 In 2024, the district court dissolved the parties' decade-long marriage. In the corresponding permanent orders, the court allocated the parties equal shares of the marital estate. Wife received the marital home and some savings. Husband received a condominium in San Francisco (the condo). Additionally, the court ordered husband to pay wife maintenance in the amount of $1,551.56 per month for sixty-nine months.

## II.  Jurisdiction

¶ 3 Husband contends that wife did not file a timely notice of appeal and asserts that we lack jurisdiction to consider her appeal.

1

Because jurisdiction is a threshold matter, we consider it first and reject husband's contention.

¶ 4     In a civil case, a notice of appeal must be filed within forty-nine days after entry of the order being appealed.  C.A.R. 4(a)(1).  "The timely filing of a notice of appeal is a jurisdictional prerequisite for appellate review."  *In re Marriage of James*, 2023 COA 51, ¶ 8.

¶ 5     The parties' permanent orders were not final until the district court resolved their attorney fees requests under section 14-10-119, C.R.S. 2025, on December 22, 2024.  *See In re Marriage of Wiggs*, 2025 COA 10, ¶9 ("In dissolution proceedings, an order generally is not final and appealable until the district court has issued permanent orders resolving all outstanding issues between the parties, including parental responsibilities, child support, maintenance, disposition of property, and attorney fees.").  Therefore, wife's notice of appeal, filed on February 9, 2025, was timely, and we have jurisdiction to review her contentions.  *See id.*

### III.     Marital Estate

¶ 6     Wife first contends that the district court abused its discretion in allocating the marital property equally.  We are not persuaded.

## A. Additional Facts

¶ 7    During the permanent orders hearing, husband sought an equal allocation of the marital estate, while wife sought a disproportionate allocation, with her receiving 60% and husband receiving 40% of the marital estate.  Wife argued that she would be required to refinance the marital home, whereas husband would not be required to refinance the condo.  However, wife's complaint regarding the marital home was mooted by the parties' later stipulation.  Therefore, the parties' appeal centers on the condo's value and associated debt, and, relatedly, whether money given to the parties by husband's parents constituted a gift or a loan.

¶ 8    Husband valued the condo at $597,800 based on estimates from Zillow and Redfin.  Wife valued the condo at $660,000 based on its 2020 property tax assessments from the City of San Francisco.  The district court weighed both parties' estimates, acknowledged that both estimates had limitations, and ultimately found that husband's estimate was more reliable "because it [was] based on more current information."  The parties agreed that husband would retain the condo.

¶ 9     Regarding the money provided by husband's parents, husband contends it is a marital debt while wife contends the money was a gift. Husband testified that in March 2015, his parents loaned the parties $127,500 so that they could purchase the condo, and the parties signed a promissory note. Over the course of their marriage, the parties borrowed additional funds from husband's parents. Each time they borrowed funds, the parties executed a new promissory note. The new promissory note included a 3% interest rate and required monthly payments. The final promissory note, executed on September 28, 2022, consolidated all prior loans and totaled $716,657.43.[1] The final loan document was signed by husband and wife and husband's parents. The court found, and the parties acknowledge, that the loans were not secured by a lien on the condo.

---

[1] A de minimis discrepancy exists between the loan total in the permanent orders ($716,657.13) and the property spreadsheet ($716,657.43). But it appears from the payment schedule that the court intended for the parties to refer to the spreadsheet for the total loan amount.

¶ 10    At the hearing, wife contended that the moneys were gifts and that the marital portion of any loan should be reduced to the value of the condo because the condo was not worth the principal amount owed on the loan.  Wife also claimed that husband's parents may not survive long enough to receive full payment of this thirty-year loan.  Nevertheless, wife also agreed that the loan proceeds were used not only to fund the condo purchase but also to purchase stock options, fund the down payment for the marital home purchase, and pay architects for plans to remodel the marital home.

¶ 11    The court found that the moneys were acquired through bona fide loans from husband's parents to husband and wife and that the final consolidated loan was a legitimate marital debt.  In reaching this conclusion, the court stated that "the[] loans ha[d] all the hallmarks of legitimate debt."  The court allocated the condo and the consolidated loan from husband's parents to husband.

¶ 12    After weighing the parties' assets and debts, the district court found that the marital estate should be divided equally because even though the parties faced disparate economic circumstances (wife had always earned less than husband), husband's earnings

5

and the loans from his parents had enabled the parties to build the marital estate.

## B. Standard of Review and Applicable Law

¶ 13    The district court has wide latitude to equitably distribute marital property based upon the facts and circumstances of the case, and we will not disturb its decision absent "a clear abuse of discretion." *In re Marriage of Balanson*, 25 P.3d 28, 35 (Colo. 2001); *see also In re Marriage of Hunt*, 909 P.2d 525, 538 (Colo. 1995) (discretionary standard of review reflects that the trial court, not the appellate court, is best situated to determine an equitable property division).  A court abuses its discretion when its ruling misconstrues or misapplies the law or is manifestly arbitrary, unreasonable, or unfair.  *In re Marriage of Evans*, 2021 COA 141, ¶ 25.

¶ 14    In a dissolution of marriage proceeding, the court must divide marital property as it deems just.  § 14-10-113(1), C.R.S 2025. When dividing marital property, the court considers all relevant factors under section 14-10-113(1), including each spouse's (1) contribution to the acquisition of the marital property; (2) awarded property; (3) economic circumstances; and

6

(4) increased, decreased, or depleted separate property. § 14-10-113(1)(a)-(d); *see Balanson*, 25 P.3d at 35. "The property division must be equitable, but not necessarily equal." *In re Marriage of Wright*, 2020 COA 11, ¶ 3. And "[t]he key to an equitable distribution is fairness, not mathematical precision." *In re Marriage of Gallo*, 752 P.2d 47, 55 (Colo. 1988).

## C. Analysis

¶ 15 We discern no abuse of discretion in the court's property division, for five reasons. First, we reject wife's assertions that the loan from husband's parents for the condo was not a "lien or encumbrance on [the] property" and instead constituted a gift. The record shows that the court recognized the loan was not a lien, but it correctly determined it was a legitimate marital debt and treated it as such in dividing the marital property.

¶ 16 Second, we reject wife's assertion that the condo is an income producing property because a tenant occupies it and because husband dips into marital assets to make twice monthly payments on the promissory note. The record shows that husband reaped no profits from the rental income but instead used the rental income and other marital assets to satisfy the loan from husband's parents.

7

Moreover, the terms of the promissory note, which both parties signed, required twice monthly payments.

¶ 17    Third, we reject wife's contention that the court mischaracterized the property by lumping all of the loans together and classifying them as encumbering the condo, thereby reducing its value.  The court acknowledged in its permanent orders that not all of the loans from husband's parents were incurred specifically for the condo.  Indeed, the record shows the parties used the loan proceeds to purchase stock options, to make the down payment on the marital home (awarded to wife), and to pay an architect for plans to remodel the marital home.  As the district court correctly noted, "It makes no difference whether the loan is listed as an encumbrance on the condo or as a debt assumed by husband. There is no difference in the ultimate calculation of the marital estate and the allocation between the parties."  To the extent wife asserts the court used a maintenance award to "equalize" the property allocation, we reject this argument because the record does not support it.

¶ 18    Fourth, to the extent that wife argues husband's parents could cancel husband's obligation under the loan at any time, either

voluntarily or through death, and thereby provide an unfair benefit to husband, we are not persuaded. "[I]n determining whether a spouse's interest constitutes property," a court should "focus on whether the spouse has an enforceable right to receive a benefit." *In re Marriage of Cardona*, 2014 CO 3, ¶ 26; *see Balanson*, 25 P.3d at 35. Interests that are "speculative" are "mere expectancies" and do not constitute property subject to division. *Balanson*, 25 P.3d at 35. As the court noted, both parties benefited from the loan during the marriage and the loan remains a viable debt.

¶ 19 Finally, wife faults the court for accepting husband's spreadsheet because it excluded one asset (a trailer) that wife had in her possession that required allocation. Husband acknowledges this mistake and agrees that wife should keep the trailer, which nets wife the trailer's nominal value of $1,000. Thus, we discern no harm to wife resulting from the court's failure to address this issue.

¶ 20 Because the district court considered the totality of the circumstances in dividing the marital estate, and because the record supports its findings regarding the marital assets and debts, we conclude that no abuse of discretion occurred.

9

IV.     Spousal Maintenance

¶ 21    Wife next contends that the district court reversibly erred in determining spousal maintenance. We agree.

A. Additional Facts

¶ 22    In the permanent orders, the court awarded wife spousal maintenance in the amount of $1,551.56 per month for sixty-nine months and permitted an offset for the temporary maintenance husband had already paid.

¶ 23    The record shows that husband's gross monthly income was approximately $21,106 (or $253,272 per year) and that wife was unemployed.

¶ 24    The court found that wife's past employment history showed that she could be employed in the future if she wished. The court was not persuaded by wife's claim that she was unable to work because of her medical conditions and, instead, found that wife was shirking her financial obligation by not working. The court ultimately found that wife was capable of working at a job earning an annual salary of $71,175, which is a monthly income of $5,931.25.

¶ 25    Based on the parties' respective incomes, the court determined

that "[t]he guideline amount of maintenance" was $1,551.56 per

month and that "no adjustments [we]re necessary to the guideline

amount or term of maintenance."

### B. Standard of Review and Applicable Law

¶ 26    The district court has broad discretion in deciding the amount

and duration of a maintenance award, and, absent an abuse of that

discretion, its decision will not be reversed.  *See* § 14-10-114(2),

(3)(e), C.R.S. 2025 ("The court has discretion to determine the

award of maintenance that is fair and equitable to both parties

based upon the totality of the circumstances."); *see also In re*

*Marriage of Vittetoe*, 2016 COA 71, ¶ 14 (concluding that the revised

statute intended "for the district court to retain broad discretion"

over maintenance).  The court abuses its discretion if its decision is

manifestly arbitrary, unreasonable, or unfair or if it misapplies the

law.  *In re Marriage of Herold*, 2021 COA 16, ¶ 5.  However, we

review de novo the district court's interpretation and application of

the law.  *See Vittetoe*, ¶ 4.

¶ 27    Section 14-10-114(3) specifies the process the district court

must follow when considering a maintenance request.  *In re*

*Marriage of Stradtmann*, 2021 COA 145, ¶ 28. "[T]he court must first make written or oral findings on each party's gross income, the marital property apportioned to each party, each party's financial resources, the reasonable financial need as established during the marriage, and the taxability of the maintenance awarded." *Herold*, ¶ 25; *see* § 14-10-114(3)(a)(I).

¶ 28    Next, the court must determine the amount and term of maintenance, if any, that is equitable after considering the statutory advisory guidelines and a list of nonexclusive statutory factors. § 14-10-114(3)(a)(II)(A)-(B), (3)(b), (3)(c); *Wright*, ¶15. However, as relevant here, when the parties' combined annual adjusted gross income exceeds $240,000, the advisory guideline amount for maintenance under section 14-10-114(3)(b)(I) "does not apply." § 14-10-114(3.5). Instead, the court must determine the amount of maintenance based on the statutory factors in section 14-10-114(3)(c). § 14-10-114(3.5) (providing that when the adjusted gross income exceeds the advisory guideline amount, the "court shall instead consider the factors set forth in subsection (3)(c)," such as financial resources, lifestyle, the distribution of marital property, employment and employability, the duration of the

marriage, and the parties' ages and health); *see also People in Interest of C.N.*, 2018 COA 165, ¶ 35 (holding that the word "shall" in a statute has a mandatory connotation).

¶ 29 Finally, section 14-10-114(3) also requires the court to find that the party seeking maintenance lacks sufficient property, including marital property apportioned to them, to provide for their reasonable needs and is unable to support themself through appropriate employment before awarding maintenance. § 14-10-114(3)(a)(II)(C), (3)(d).

## C. Analysis

¶ 30 We conclude that the district court erred by purporting to use the advisory guideline maintenance amount and by erroneously extrapolating from that guideline to calculate maintenance. Section 14-10-114(3.5) provides that the advisory maintenance guideline "does not apply" to parties jointly earning more than $240,000, and the maintenance worksheet states the same. Here, the parties' joint income of $324,447 exceeded this threshold. Thus, the court erred by relying on the guidelines in subsection (3)(b) to compute the maintenance award without otherwise explaining why that amount was justified by the statutory factors in subsection (3)(c).

13

¶ 31    We acknowledge that the district court made findings with respect to the twelve subsection (3)(c) factors as required by section 14-10-114(3.5), but it did so without acknowledging that the parties' combined annual adjusted gross income exceeded $240,000.  And although husband directs our attention to other sections of the permanent orders in which the district court made findings discussing some of the factors, these findings do not give us a clear understanding of how the court determined the final amount of the maintenance award.  *See Wright*, ¶ 20.  Instead, it appears that the court's calculation was based solely, and erroneously, on the maintenance guideline in subsection (3)(b).  *See* § 14-10-114(3.5).

¶ 32    Moreover, even if the court attempted to extrapolate from the guideline amount of maintenance based on the parties' combined income, the record shows that the court did not compute that amount accurately.  As reflected in the court's maintenance worksheet, the figure the court used as "40% of [the parties'] combined monthly adjusted gross income" — the starting place to compute maintenance under the guidelines, *see* § 14-10-114(3)(b)(I)(B) — was $8,000.  That figure assumed the parties' joint

14

income was the guideline maximum of $240,000 ($240,000/12 = $20,000 x 0.40 = $8,000), not the parties' actual joint income of $324,447 ($324,447/12 = $27,037.25 x 0.40 = $10,814.90). Yet the court subtracted the full amount of wife's imputed income, to husband's benefit.

¶ 33 Accordingly, we reverse the court's maintenance award and remand for the recalculation of maintenance. On remand, the district court must comply with section 14-10-114, subsections (3) and (3.5), making findings where required and addressing the factors relevant to its determination. *See Herold*, ¶¶ 29-32; *Stradtmann*, ¶¶ 33-35. The district court must make sufficiently explicit findings of fact to provide a clear understanding of the basis of its order. *See Wright*, ¶ 20; *In re Marriage of Gibbs*, 2019 COA 104, ¶ 9.

¶ 34 "Because maintenance is based on the parties' financial circumstances at the time the order is entered, the district court should consider the parties' current circumstances on remand." *Wright*, ¶ 24. Accordingly, we decline to address wife's remaining contentions that the district court erred in determining that wife was shirking her financial obligation by not working and by failing

to consider the equities of the situation. On remand, the court must make new findings regarding the parties' individual and combined incomes.

## V. Disposition

¶ 35 The judgment is affirmed in part and reversed in part, and the case is remanded with directions.

JUDGE BROWN and JUDGE SCHUTZ concur.